**FILED**

APR 3 0 2024

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 14-22555-B-13 |
| MELANIO L. VALDELLON and ELLEN C. VALDELLON, | Adversary No. 21-2008 |
| | DC No. PHH-3 |
| Debtor(s). | |

| | |
|---|---|
| MELANIO L. VALDELLON and ELLEN C. VALDELLON, | |
| Plaintiff(s), | |
| v. | |
| WELLS FARGO BANK, N.A.; PHH; IMPAC CMB TRUST SERIES 2005-6; WELLS FARGO BANK, N.A., AS TRUSTEE OF THE IMPAC CMB TRUST SERIES 2005-6, | |
| Defendant(s). | |

**OPINION**

Mark A. Wolff, Wolff & Wolff, Elk Grove, CA, for plaintiffs.

Robert W. Norman, Jr., Neil J. Cooper, Houser LLP, Irvine, CA, for defendants.

CHRISTOPHER D. JAIME, Bankruptcy Judge:

## I.
### Introduction

A bankruptcy discharge operates as an injunction against the collection of a discharged debt as a personal liability of the

debtor.  <u>See</u> 11 U.S.C. § 524(a)(2).[1]  A violation of the

discharge injunction is an act of civil contempt for which the

bankruptcy court may award compensatory damages as are necessary

or appropriate to enforce the discharge injunction or remedy its

violation.  <u>See</u> 11 U.S.C. § 105(a).[2]  This opinion holds that the

compensatory damages a bankruptcy court may award to enforce the

discharge injunction or remedy its violation-either directly or

under 11 U.S.C. § 524(i) which treats a violation of its terms as

a violation of the discharge injunction-do not include emotional

distress damages.[3]  <u>Taggart v. Lorenzen</u>, 139 S. Ct. 1795 (2019),

---

[1]Section 524(a)(2) states as follows

(a) A discharge in a case under this title— ... (2)
operates as an injunction against the commencement or
continuation of an action, the employment of process,
or an act, to collect, recover or offset any such debt
as a personal liability of the debtor, whether or not
discharge of such debt is waived[.]

11 U.S.C. § 524(a)(2).

[2]Section 105(a) states as follows:

(a) The court may issue any order, process, or judgment
that is necessary or appropriate to carry out the
provisions of this title.  No provision of this title
providing for the raising of an issue by a party in
interest shall be construed to preclude the court from,
sua sponte, taking any action or making any
determination necessary or appropriate to enforce or
implement court orders or rules, or to prevent an abuse
of process.

11 U.S.C. § 105(a).

[3]Section 524(i) states as follows:

The willful failure of a creditor to credit payments
received under a plan confirmed under this title,
unless the order confirming the plan is revoked, the
plan is in default, or the creditor has not received

- 2 -

in which the United States Supreme Court stated that the "old soil" of injunction enforcement and the "traditional principles" of civil contempt apply "straightforwardly" to the discharge injunction compels this result.

The remainder of this opinion explains why a claim alleged under § 524(i) fails as a matter of law and as implausible. And the opinion explains why, without a § 524 claim, this court lacks jurisdiction over remaining non-core state law claims under 28 U.S.C. § 1334 or, even if jurisdiction exists or is ever found to exist, the court would abstain under 28 U.S.C. § 1334(c)(1).[4]

## II.
## Background

Defendants Wells Fargo Bank, N.A., as Indenture Trustee Under the Indenture Relating to the IMPAC CMB Trust Series 2005-6, and PHH Mortgage Corporation (collectively,

---

payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), shall constitute a violation of an injunction under subsection (a)(2) if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

11 U.S.C. § 524(i).

[4]Section 1334(c)(1) states as follows:

(c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

- 3 -

"Defendants"), move to dismiss the *Second Amended Complaint for 1. Violations of 11 U.S.C. 524(i) [sic]; 2. Intentional Inflction of Emotional Distress; 3. Contract Actions or Declaratory Relief; and 4. Unlawful Fraudulent and Unfair Business Acts and Practices (California Business and Professions Code 17200 et seq, 17203 [sic])* ("SAC" or "second amended complaint") filed by Plaintiffs Melanio L. Valdellon, III, and Ellen C. Valdellon (collectively, "Plaintiffs"). For the reasons explained below, Defendants' motion will be granted. The § 524(i) claim in Count 1 and the intentional infliction of emotional distress claim in Count 2 will be dismissed with prejudice. The remaining state law claims in Counts 3 and 4 will be dismissed without prejudice.

A.   *The Loan and the Property*

The subject of this adversary proceeding is a loan that Mr. Valdellon obtained in 2005 secured by real property located in Roseville, California.[5]  SAC ¶¶ 3, 9-13; <u>Valdellon v. Wells Fargo Bank, N.A., et al. (In re Valdellon)</u>, 2024 WL 404404, at *1 (E.D. Cal. Feb. 2, 2024).  Defendant PHH has been the servicer of the loan since 2019.  SAC ¶¶ 10, 39; Bankr. Docket 135.  Defendant Wells Fargo Bank, N.A., as Indenture Trustee, is the owner of the loan.  SAC ¶¶ 11-12.

B.   *Plaintiffs' Chapter 13 Bankruptcy Case and This Adversary Proceeding*

---

[5]At the inception of this adversary proceeding, Plaintiffs asserted that the property was their principal residence when they filed their bankruptcy petition.  Plaintiffs' New York state tax returns established that Plaintiffs were New York residents, and they claimed state tuition tax benefits based on New York residency, when they filed their petition.  <u>See</u> Adv. Docket 48.

Plaintiffs were debtors in the parent chapter 13 case.  They filed a chapter 13 petition and an initial sixty-month chapter 13 plan on March 13, 2014.  SAC ¶¶ 16, 18, 19; Bankr. Dockets 1, 7. The first plan payment was due "not later than the 25th day of each month beginning the month after the order for relief under chapter 13."  Bankr. Dockets 7 at § 1.01, 105 at § 2.01.

Plaintiffs filed a first amended plan on April 24, 2014. SAC ¶ 20; Bankr. Dockets 31-36.  The first amended plan was confirmed on August 1, 2014.  SAC ¶ 21; Bankr. Docket 49.

To adjust payments for certain tax debts, Plaintiffs filed a first modified plan and a motion to confirm it on July 21, 2015. SAC ¶ 24; Bankr. Dockets 61-66.  The first modified plan was confirmed on December 10, 2015.  SAC ¶ 25; Bankr. Dkt. 68.

Plaintiffs defaulted on payments required by the first modified plan because, on November 29, 2017, the chapter 13 trustee ("Trustee") filed a *Notice of Default and Application to Dismiss* which stated as follows:

> Debtor has failed to make all payments due under the plan.  As of November 28, 2017, payments are delinquent in the amount of $4,574.00.  In order to discharge this Notice of Default, you must cure this delinquency **AND** make all subsequent payments that are due within the next 30 days.  Because your next payment of $2,798.00 will become due on December 25, 2017, the **TOTAL** amount **you must pay by December 29, 2017 is $7,372.00.**

Bankr. Docket 70 (emphasis in original).

The Trustee also filed a motion to dismiss Plaintiffs' chapter 13 case on May 11, 2018.  Bankr. Docket 92.  Although Plaintiffs opposed the Trustee's motion on June 4, 2018, they nevertheless agreed with the Trustee and proposed to file a second modified plan before the motion to dismiss was heard.

Bankr. Docket 98.

Plaintiffs filed a second modified plan on June 15, 2018. SAC ¶ 26; Bankr. Dockets 101-106.  The second modified plan was confirmed on August 24, 2018.  SAC ¶ 27; Bankr. Docket 110.  The second modified plan is Plaintiffs' operative confirmed chapter 13 plan for purposes of this adversary proceeding.  Valdellon, 2024 WL 404404 at *1.

All of Plaintiffs' confirmed chapter 13 plans provided for payment of Defendants' claim as a Class 1 secured claim over a sixty-month period, i.e., prepetition arrears and ongoing postpetition mortgage payments were paid through the Trustee according to § 1322(b)(5).[6]  SAC ¶¶ 28, 29, 146-148.  The amount of arrears to be paid under the second modified plan (and all plans prior) was $19,140.48, as stated in a July 10, 2015, proof of claim.  SAC ¶¶ 162-163; Bankr. Claims Register, Claim 9-1.

Following confirmation of the second modified plan, Plaintiffs again defaulted so, on September 9, 2019, the Trustee moved to dismiss Plaintiffs' chapter 13 case.  Bankr. Dockets 117-121.  The motion to dismiss cited two grounds as cause for dismissal: (1) "[t]he debtors [were] delinquent to the trustee in

---

[6]Section 1322(b)(5) states as follows:

    (b) Subject to subsections (a) and (c) of this section, the plan may — ... (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]"

11 U.S.C. § 1322(b)(5).

the amount of $10,246.37 which represent[ed] approximately 3 plan payments," Bankr. Docket 117 at ¶ 1; and (2) the "commitment period exceed[ed] the permissible limit imposed by 11 U.S.C. Section 1325(b)(4). The Debtor [sic] is currently in month 66 of a 60 month plan." Id. at ¶ 2.

The Trustee's motion to dismiss was set for hearing on September 24, 2019. Bankr. Docket 118. However, Plaintiffs apparently cured the payment default sometime after the motion was filed and before it was heard because the motion was withdrawn on the record on September 24, 2019. Bankr. Docket 128.

Three days later, on September 27, 2019, the Trustee filed a *Notice to Debtor of Completed Plan Payments and Obligation to File Documents* which stated "the Chapter 13 Trustee has determined that the Debtor has completed the payments required by the confirmed plan." SAC ¶ 42; Bankr. Docket 130. On that same date, September 27, 2019, the Trustee also filed a *Notice of Final Cure Payment* which stated that "the amount required to cure the default in [Claim 9] has been paid in full." SAC ¶ 43; Bankr. Docket 125.

Defendants apparently agreed with the Trustee's final cure notice because on October 18, 2019, they filed a *Response to Notice of Final Cure* in which they stated, under penalty of perjury, "[c]reditor agrees that the debtors have paid in full the amount required to cure the prepetition default on the creditor's claim" and "[c]reditor states that the debtor(s) are current with all postpetition payments consistent with § 1322(b)(5) of the Bankruptcy Code including all fees, charges,

expenses, escrow, and costs.  The next postpetition payment from the debtor(s) is due on: 11/1/2019[.]"  SAC ¶ 45-47; Claims Register, Claim 9-1.

With plan payments completed, and with Defendants apparently in agreement that with the completion of plan payments all prepetition arrears were cured and postpetition payments were current, the Trustee filed a final report and account on February 21, 2020.  Bankr. Dockets 138, 139.  The final report and account was approved, and the Trustee was relieved of further obligations in Plaintiffs' chapter 13 case, on May 12, 2020.  Bankr. Dockets 145, 146.  Plaintiffs' discharge was entered on June 1, 2020. SAC ¶ 48; Bankr. Docket 149.  Plaintiffs' chapter 13 case was closed on June 15, 2020.  Bankr. Docket 151.

Facing a foreclosure, SAC ¶¶ 96, 107, 113, 125, 234, 206, Plaintiffs reopened their chapter 13 case on January 20, 2021, Bankr. Docket 154, and filed the initial complaint in this adversary proceeding on January 21, 2021.  Adv. Docket 1. Defendants were served with a copy of the initial complaint and a reissued summons on January 27, 2021.  Adv. Docket 9.  Defendants filed an answer on March 24, 2021, Adv. Docket 19, and an amended answer on April 9, 2021.  Adv. Docket 23.

Because the court was unable to comprehend the initial complaint which it characterized as a "shotgun pleading," on June 28, 2021, the court ordered Plaintiffs to file an amended complaint that separately identified each claim, Adv. Docket 47, which they filed on July 13, 2021, Adv. Docket 59, and which Defendants promptly moved to dismiss on July 26, 2021.  Adv. Docket 62.  Following an opposition from Plaintiffs and a reply

from Defendants, on August 20, 2021, the court issued an order granting Defendants' motion to dismiss. Plaintiffs' claims under §§ 524(a) and (i) and an emotional distress claim based on the § 524 claims were dismissed with prejudice, and all remaining state law claims were dismissed without prejudice. Adv. Docket 68. A corresponding judgment was entered on August 20, 2021. Adv. Docket 70.

Plaintiffs appealed the dismissal order and judgment on September 1, 2021. Adv. Docket 75. Defendants elected to have the appeal heard by the District Court and, on September 28, 2021, the appeal was transferred from the Ninth Circuit Bankruptcy Appellate Panel to the District Court. Adv. Docket 87. The District Court heard oral argument on November 16, 2023, and on February 2, 2024, it issued an order affirming in part and reversing in part this court's decision of August 20, 2021. Adv. Docket 102; see also Valdellon, 2024 WL 404404. The District Court affirmed dismissal with prejudice of Plaintiffs' § 524(a) claim and concluded that dismissal of Plaintiffs' § 524(i) claim was also proper based on how the claim was pled. See Adv. Dockets 114 at 6:3-10, 116 at 6:6-15. However, on de novo review, the District Court stated it would have granted Plaintiffs leave to amend the § 524(i) claim although leave was never requested and amendment was never explained. Valdellon, 2024 WL 404404 at *8. The District Court remanded for that purpose and to allow this court to consider an amended § 524(i) claim in the first instance. Id. ("The Bankruptcy Court has not yet considered Debtors' allegations that payments made by the trustee under the Plan were misapplied and should give rise to a

section 524(i) claim.").  Remand also included leave to re-allege the emotional distress claim that was dismissed with prejudice because it was based on the same factual allegations as the § 524 claims and the remaining state law claims that were dismissed without prejudice.  Id. at *9-*10.

Plaintiffs filed a second amended complaint on March 1, 2024.  Adv. Docket 106.  Like its predecessors, the second amended complaint is a morass of allegations.  It also completely disregards the "short and plain statement" directive.  See Fed. R. Civ. P. 8(a); Fed. R. Bankr. P. 7008.  Plaintiffs apparently require two hundred and forty-eight paragraphs spread over thirty-one pages to allege four "Counts."

Plaintiffs served Defendants with the second amended complaint on March 1, 2024, Adv. Dockets 107-109, and Defendants again promptly moved to dismiss it on March 13, 2024.  Adv. Docket 112.  Plaintiffs filed an opposition on April 2, 2024, Adv. Docket 116, and Defendants filed a reply on April 9, 2024.  Adv. Docket 119.  The parties also filed supplemental points and authorities addressing the emotional distress claim in Count 2.  Adv. Dockets 125, 127.  The motion to dismiss was heard on April 30, 2024.  Appearances were noted on the record.

The specifics of each Count, and the reasons for their respective dismissals, are discussed in Section IV, infra.

### III.
### Legal Standard

A complaint may be dismissed for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6);

Fed. R. Bankr. P. 7012(b). "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Johnson v. Riverside Healthcare System, LP, 534 F.3d 1116, 1121 (9th Cir. 2008).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

In ruling on a Rule 12(b)(6) motion to dismiss, the court accepts all factual allegations as true and construes them, and reasonable inferences drawn from them, in a light most favorable to the non-moving party. Arizona Students' Association v. Arizona Board of Regents, 824 F.3d 858, 864 (9th Cir. 2016). Legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

The court may also consider limited materials outside the pleadings. These include documents attached to the complaint, documents incorporated by reference in the complaint, and matters subject to judicial notice. Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007) (per curium). The latter includes the court's own records. Kelly v. Johnston, 111 F.2d 613, 615 (9th Cir. 1940).

- 11 -

# IV.
## Analysis

A.   *Count 2 - Intentional Infliction of Emotional Distress
Based on a Violation of § 524(a)(2) Under § 524(i)*

Count 2 alleges a claim for intentional infliction of
emotional distress "based upon the same common factual
allegations as Count 1." SAC ¶ 208. Count 1 alleges that
Defendants violated § 524(i) which treats a violation of its
terms as a violation of § 524(a)(2). Count 2 thus seeks
emotional distress damages for a violation of the discharge
injunction. In that regard, Count 2 fails as a matter of law.
Plaintiffs may not recover emotional distress damages based on a
violation of the discharge injunction either directly or through
§ 524(i).

One court recently observed that "[t]here is a disagreement
among courts across the circuits on whether damages for emotional
distress may be awarded in cases involving the violation of the
discharge injunction." In re Weaver, 2023 WL 3362064, at *7
(Bankr. E.D. Mich. May 10, 2023).[7] The Ninth Circuit has not
directly addressed the issue.

---

[7]Circuit decisions are also sparse. The First Circuit in
United States v. Torres (In re Torres), 432 F.3d 20, 31 (1st Cir.
2005), stated that "sovereign immunity bars awards for emotional
distress damages against the federal government under § 105(a)
for any willful violation of § 524, and that immunity is not
waived by § 106" and "recognizing a waiver of sovereign immunity
for emotional distress damages in this case would run afoul of §
106(a)(5), which forbids the creation of any substantive claim
for relief 'not otherwise existing under this title, the Federal
Rules of Bankruptcy, or non-bankruptcy law.'" In Green Point
Credit, LLC v. McClean (In re McClean), 794 F.3d 1313, 1325 (11th
Cir. 2015), the Eleventh Circuit allowed emotional distress
damages for a discharge injunction violation based on a § 362
analysis by analogy. More on this later.

There is inconsistency on this issue within the Ninth Circuit. For example, Idaho bankruptcy courts have held that emotional distress damages are not available for violations of the discharge injunction. <u>In re Pohlman</u>, 2018 WL 3854137, at *6 (Bankr. D. Idaho Aug. 10, 2018); <u>In re Urwin</u>, 2010 WL 148645, at *8 (Bankr. D. Idaho Jan. 14, 2010). But this is an exception to the general practice by courts in the Ninth Circuit which is to award emotional distress damages by analogizing discharge injunction violations-and awards of compensatory damages thereunder-to violations of the automatic stay-and awards of compensatory damages thereunder. <u>See</u> <u>In re Feldmeier</u>, 335 B.R. 807, 813 (Bankr. D. Or. 2005) ("Although the Ninth Circuit has not spoken on this issue, I believe its opinion on the availability of emotional distress damages for violation of the automatic stay is instructive."). Two opinions illustrate this practice and its corresponding analysis.

The bankruptcy court in <u>In re Nordlund</u>, 494 B.R. 507 (Bankr. E.D. Cal. 2011), concluded that emotional distress damages were recoverable for the creditor's violations of the discharge injunction. It reached its decision by relying on the automatic stay violation analysis in <u>Knupfer v. Lindblade (In re Dyer)</u>, 322 F.3d 1178 (9th Cir. 2003), and <u>Feldmeier</u>, <u>supra</u>, to conclude that to the extent emotional distress damages are compensatory damages recoverable for violations of the automatic stay, by analogy, they are similarly recoverable for violations of the discharge injunction. <u>Id</u>. at 522-23.

The Ninth Circuit Bankruptcy Appellate Panel reached a similar conclusion based on a similar analysis six years later in

_Ocwen Loan Servicing, LLC v. Marino (In re Marino)_, 577 B.R. 772 (9th Cir. BAP 2017), _aff'd in part on other grounds, appeal dismissed in part_, Ocwen Loan Servicing, LLC v. Marino (In re Marino), 949 F.3d 483 (9th Cir. 2020), _cert. denied_, Marino v. Ocwen Loan Servicing, LLC (In re Marino), 141 S. Ct. 1683 (2021). In _Marino_, the Ninth Circuit Bankruptcy Appellate Panel wrote as follows:

> The Ninth Circuit has allowed emotional distress damages for automatic stay violations when the debtor '(1) suffer[s] significant harm, (2) clearly establish[es] the significant harm, and (3) demonstrate[s] a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process).' Snowden v. Check Into Cash of Wash. Inc. (In re Snowden), 769 F.3d 651, 657 (9th Cir. 2014) (quoting Dawson v. Wash. Mutual Bank, F.A. (In re Dawson), 390 F.3d 1139, 1149 (9th Cir. 2004)) (discussing violation of the automatic stay). The same rule should apply to violations of the discharge injunction. See In re Nordlund, 494 B.R. at 523 (applying Dawson's three-part test to violations of the discharge injunction); C & W Asset Acquisition, LLC v. Feagins (In re Feagins), 439 B.R. 165, 178 (Bankr. D. Haw. 2010) ('Although Dawson considered the remedy for violations of the automatic stay under section 362(k)(1), the same reasoning applies to willful violations of the discharge injunction.').

Id. at 787.[8]

---

[8]But see Rushmore Loan Management Services, LLC v. Moon (In re Moon), 2021 WL 62629 (9th Cir. BAP Jan. 7, 2021), _appeal dismissed_, 2021 WL 3509163 (9th Cir., Apr. 19, 2021). In _Rushmore_, "[t]he [bankruptcy] court declined to award [one of the debtors] emotional distress damages, because she testified that her distress was caused by Rushmore's discharge injunction violations, not stay violations." _Id._ at *3. The debtors "challenge[d] the bankruptcy court's decision to not award damages for Rushmore's violation of the discharge injunction." _Id._ at *4. The Ninth Circuit Bankruptcy Appellate Panel concluded that "[t]he bankruptcy court did not abuse its discretion by not awarding the [debtors] discharge injunction violation damages." _Id._ at *10.

Notably, <u>Nordlund</u> and <u>Marino</u> predate <u>Taggart</u>. That makes a difference. In several respects, <u>Taggart</u> changes the civil contempt landscape as it pertains to the discharge injunction and the compensatory damages that a bankruptcy court may award to enforce the discharge injunction or remedy its violation.[9]

First, in <u>Taggart</u>, the Supreme Court explained critical distinctions between the automatic stay and the discharge injunction as follows:

> An automatic stay is entered at the outset of a bankruptcy proceeding. The statutory provision that addresses the remedies for violations of automatic stays says that 'an individual injured by any willful violation' of an automatic stay 'shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.' 11 U.S.C. § 362(k)(1). This language, however, differs from the more general language in section 105(a). *Supra*, at 1801. The purposes of automatic stays and discharge orders also differ: A stay aims to prevent damaging disruptions to the administration of a bankruptcy case in the short run, whereas a discharge is entered at the end of the case and seeks to bind creditors over a much longer period.

<u>Taggart</u>, 139 S. Ct. at 1803-04.

Second, the Supreme Court rejected a proposal by Taggart to apply the standard that governs a determination of whether the automatic stay is violated to a determination of whether the

---

[9]As noted below, <u>Taggart</u> also notes that another purpose of civil contempt is to coerce compliance. <u>See also</u> <u>United States v. United Mine Workers of America</u>, 330 U.S. 258, 303-04 (1947); <u>Doyle v. London Guarantee & Accident Company, Limited</u>, 204 U.S. 599, 604-05 (1907). Civil contempt sanctions may therefore include "mild" punitive damages. <u>Lenore L. Albert-Sheridan, dba Law Offices of Lenore Albert v. State Bar of California (In re Albert-Sheridan)</u>, --- B.R. ---- 2024 WL 1401289, at *20 (9th Cir. BAP April 2, 2024) (citing <u>Marino</u>, 577 B.R. 788-89 & n.12). This aspect of civil contempt is not before the court; however, the court notes that the $4,500,000.00 in punitive damages demanded by Plaintiffs are anything but "mild."

discharge injunction is violated, *i.e.*, "a finding of civil contempt if the creditor was aware of the discharge order and intended the actions that violated the order." Id. at 1803. Citing distinct and discernable differences between the automatic stay and the discharge injunction, the Supreme Court concluded "[t]hese differences in language and purpose sufficiently undermine Taggart's proposal to warrant its rejection." Id. at 1804.

Third, the Supreme Court in Taggart made it unmistakably clear that a violation of the discharge injunction is an act of civil contempt governed by historical standards. It explained:

> Here, the statutes specifying that a discharge order 'operates as an injunction,' § 524(a)(2), and that a court may issue any 'order' or 'judgment' that is 'necessary or appropriate' to 'carry out' other bankruptcy provisions, § 105(a), bring with them the 'old soil' that has long governed how courts enforce injunctions.

> That 'old soil' includes the 'potent weapon' of civil contempt. *Longshoremen v. Philadelphia Marine Trade Assn.*, 389 U.S. 64, 76, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967). Under traditional principles of equity practice, courts have long imposed civil contempt sanctions to 'coerce the defendant into compliance' with an injunction or 'compensate the complainant for losses' stemming from the defendant's noncompliance with an injunction. *United States v. Mine Workers*, 330 U.S. 258, 303–304, 67 S.Ct. 677, 91 L.Ed. 884 (1947); see D. Dobbs & C. Roberts, *Law of Remedies* § 2.8, p. 132 (3d ed. 2018); J. High, *Law of Injunctions* § 1449, p. 940 (2d ed. 1880).

Id. at 1801.

Fourth, and most important, in reference to the "old soil" of civil contempt, the Supreme Court stated that the "traditional civil contempt principles apply straightforwardly to the bankruptcy discharge context." Id. at 1802.

Two salient points emerge from Taggart. First, the place to

- 16 -

look to determine if the civil contempt remedy allows bankruptcy courts to award emotional distress damages for violations of the discharge injunction is the "old soil" of injunction enforcement and its "traditional principles" of civil contempt and not § 362 by analogy. Second, the duty of the bankruptcy court is to apply the "old soil" and "traditional principles" concepts "straightforwardly" to the discharge injunction.

An analysis begins with the recognition that there is no private right action to enforce the discharge injunction. Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 510 (9th Cir. 2002) ("We cannot say that Congress intended to create a private right of action under § 524, and we shall not imply one."); see also In re Costa, 172 B.R. 954, 965-66 (Bankr. E.D. Cal. 1994) (same). Rather, as the Supreme Court explained in Taggart, the discharge injunction is enforced and its violations are remedied through a civil contempt action under § 105(a). Taggart, 139 S. Ct. at 1801; see also Brown v. Transworld Systems, Inc., 73 F.4th 1030, 1038 (9th Cir. 2023) ("The appropriate remedy [for a violation of the discharge injunction] is contempt of court against the offending creditor pursuant to 11 U.S.C. § 105(a)."); Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1069 (9th Cir. 2002) ("We have recently held that section 524(a) may be enforced by the court's contempt power under 11 U.S.C. section 105(a).").

A civil contempt action to enforce or remedy violations of the discharge injunction brings with it potential liability for compensatory damages. Walls, 276 F.3d at 507 ("[C]ompensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance

- 17 -

with the discharge injunction."); <u>see also</u> <u>Brown</u>, 73 F.4th at 1038 (reaffirming availability of compensatory damages as stated in <u>Walls</u>). But what exactly are compensatory damages? <u>Bohac v. Department of Agriculture</u>, 239 F.3d 1334 (Fed. Cir. 2001), offers the following explanation and notes a critical distinction:

> Compensatory damages are the damages awarded to a person as compensation, indemnity or restitution for harm sustained by him. Restatement (Second) of Torts § 903 (1979). Compensatory damages are divided into two categories: pecuniary and non-pecuniary. *Id.* at §§ 905 and 906. Non-pecuniary compensatory damages include compensation for bodily harm and emotional distress, and are awarded without proof of pecuniary loss. *Id.* at § 905.

<u>Id.</u> at 1341 (internal quotation marks omitted).

Fundamental is that the Supreme Court and the Ninth Circuit put emotional distress damages in the *nonpecuniary* category. <u>Cummings v. Premier Rehab Keller, P.L.L.C.</u>, 596 U.S. 212, 227 (2022) (emotional distress damages are typically awarded "where the injury entails more than a pecuniary loss"); <u>Federal Aviation Administration v. Cooper</u>, 566 U.S. 284, 302 (2012) (referring to "mental and emotional harm" as "nonpecuniary"); <u>United States v. Alvarez</u>, 567 U.S. 709, 749 n.14 (2012) (Alito, J., with whom Scalia, J., and Thomas, J., joined, dissenting) ("the harm remedied by the torts of . . . intentional infliction of emotional distress . . . is often nonpecuniary in nature"); <u>Rouse v. United States Department of State</u>, 567 F.3d 408, 417 (9th Cir. 2009) ("The resulting prolonged imprisonment caused Rouse extreme emotional distress and other nonpecuniary harms."); <u>Farrens v. Meridian Oil, Inc.</u>, 852 F.2d 1289, 1988 WL 79482, at *3 (9th Cir. July 19, 1988) ("Second, the award included nonpecuniary damages for emotional distress and loss of reputation[.]").

- 18 -

Characterization of damages for emotional distress as nonpecuniary is significant because the "old soil" of injunction enforcement and its "traditional principles" of civil contempt did not compensate parties injured by injunction violations or other acts of disobedience of court process for nonpecuniary loss, emotional distress or otherwise.  In other words, the historical measure of compensation awarded in civil contempt actions was pecuniary loss.

The United States largely adopted the English concept of civil contempt and its associated purposes and remedies.  Joseph H. Beale, Jr., <u>Contempt of Court, Criminal and Civil</u>, Harvard Law Journal, Vol. 21, No. 3, 161 at 167-69 (1908).  The Supreme Court recognized this, and it recognized that English courts limited compensation for civil contempt to pecuniary loss, in its 1897 opinion in <u>Hovey v. Elliott, et al.</u>, 167 U.S. 409 (1897), in which it stated as follows:

> The conclusion which we have reached accords with that of Daniell, who, in his Chancery Pleadings and Practice (volume 1, pp. *504, *505), [notes]:
>
>> ... the personal and *pecuniary* inconvenience to which a party subjects himself by a contempt of the ordinary process of the court[.]

<u>Id.</u> at 436 (emphasis added).

The Supreme Court reiterated this critical point fourteen years later in <u>Gompers v. Buck's Stove & Range Company</u>, 221 U.S. 418 (1911), in which it wrote as follows:

> In this case the alleged contempt did not consist in the defendant's refusing to do any affirmative act required, but rather in doing that which had been prohibited. *The only possible remedial relief for such disobedience would have been to impose a fine for the use of complainant, measured in some degree by the*

*pecuniary injury caused by the act of disobedience.*

Id. at 443-44 (emphasis added, citations omitted).[10]

The weight of authority from other Circuits also supports the conclusion that the civil contempt remedy does not include nonpecuniary compensation for emotional distress.  The Eighth Circuit in McBride v. Coleman, 955 F.2d 571 (8th Cir.), *cert. denied*, 506 U.S. 819 (1992), which dealt with the power of civil contempt more generally, not specifically under §§ 105(a) and 524(a)(2), vacated a judgment awarding emotional distress damages and in the course of doing so stated as follows:

A special word is in order regarding the award of

---

[10]The Supreme Court cited "Rapalje, Contempts, §§ 131-134" to support this passage.  The full citation is Stewart Rapalje, *A Treatise on Contempt Including Civil and Criminal Contempts of Judicial Tribunals, Justices of the Peace, Legislative Bodies, Municipal Boards, Committees, Notaries, Commissioners, Referees and Other Officers exercising judicial and quasi-judicial functions*, L.K. Strouse & Co., Law Publishers (1884).  Section 131 is captioned "The fine-what included" and refers to the civil contempt fine imposed for disobedience of an order or decree as compensation or indemnity for "pecuniary injury."  Section 133 is captioned "Compensation to an injured party" and refers to the "loss or injury" compensated through civil contempt as a "pecuniary loss or injury."
The Supreme Court also supported the passage with citations to Wells, Fargo & Co. v. Oregon Ry. & Nav. Co., 19 Fed. 20 (Cir. Ct. Or. 1884), Woodruff v. North Bloomfield Gravel-Min. Co. (In re North Bloomfield Gravel-Min. Co.), 27 Fed. 795 (Cir. Ct. Cal. 1886), and Sabin v. Fogarty, 70 Fed. 482 (Cir. Ct. Wash. 1895).  The measure of compensation for the civil contempt in each case was pecuniary loss.  Wells, Fargo & Co., 19 Fed. at 23; Woodruff, 27 Fed. at 799-800; Sabin, 70 Fed. at 485.  Notable is that each opinion is by a federal appellate court in or what was to become the Ninth Circuit.  So not only does the Ninth Circuit's historical civil contempt precedent align neatly with Supreme Court authority, but, the Ninth Circuit's historical civil contempt precedent which recognized pecuniary loss as the measure of compensation for civil contempt is part of the "old soil" of injunction enforcement and its "traditional principles" of civil contempt.

$50,000.00 for emotional distress.  Even assuming
arguendo a causal relationship between the violation of
the injunction and the harm suffered, we do not believe
civil contempt to be an appropriate vehicle for
awarding damages for emotional distress[.]  The
problems of proof, assessment, and appropriate
compensation attendant to awarding damages for
emotional distress are troublesome enough in the
ordinary tort case, and should not be imported into
civil contempt proceedings.  Although in some
circumstances an award of damages to a party injured by
the violation of an injunction may be appropriate, the
contempt power is not to be used as a comprehensive
device for redressing private injuries, and it does not
encompass redress for injuries of this sort.

Id. at 577 (internal citations omitted).

In Burd v. Walters (In re Walters), 868 F.2d 665 (4th Cir.

1989), the Fourth Circuit stated that "[n]o authority is offered

to support the proposition that emotional distress is an

appropriate item of damages for civil contempt, and we know of

none."  Id. at 670.  In Weitzman v. Stein, 98 F.3d 717 (2d Cir.

1996), the Second Circuit similarly stated that "the district

court was within its right to reject Weitzman's claim for

compensation for the emotional distress she and her husband

suffered because of the contempt."  Id. at 720.  And in the

context of discussing the Bankruptcy Code, the district court in

United States v. Harchar, 331 B.R. 720 (N.D. Ohio 2005), observed

that "[t]here is little indication that awarding damages for

emotional harm was commonplace under the bankruptcy court's

traditional contempt procedures—or in any contempt procedures

familiar to Congress in 1984."  Id. at 730 (emphasis in

original).

In an effort to bring nonpecuniary damages for emotional

distress under the civil contempt umbrella, Plaintiffs cite Leman

v. Krentler-Arnold Last Hinge Co., 284 U.S. 448 (1932), for the

- 21 -

proposition that "an expansive view of damages available in actions for violation of an injunction has long been recognized." Adv. Docket 127 at 6:24-25. Plaintiffs assert that <u>Leman</u> is authority for the court to use its equitable powers to award nonpecuniary emotional distress damages for civil contempt to "insure full compensation to the injured party." <u>Leman</u>, 284 U.S. at 456. Plaintiffs misread <u>Leman</u>.

<u>Leman</u> was an appeal from a final decree entered in a civil contempt proceeding in which the District Court found a patent infringer guilty of contempt for deliberate violation of an injunction and ordered the contemnor to pay the injured party over $39,000.00 in profits it made as a result of its violation. <u>Id.</u> at 450-51. The Court of Appeals sustained the contempt order but reversed the District Court's award of profits holding that the profits could not be recovered as a measure of pecuniary loss. More precisely, the Court of Appeals stated as follows:

> But we are of the opinion that the District Court went far afield and exceeded its authority in decreeing that the complainants recover profits made by the respondent by the infringement of the letters patent. In Gompers v. Buck's Store & Range Co., supra, and Kreplik v. Couch Patents Co., supra, 190 F. at page 569, it was pointed out that the proper remedial relief for the disobedience of an injunction in an equity case is to impose a 'fine for the use of the complainant, measured in some degree by the pecuniary injury caused by the act of disobedience.' In other words, that the amount of the fine or remedial relief is to be governed largely by the pecuniary damage or injury which the act of disobedience caused the complainant. *The pecuniary damage surely does not include profits which the defendant made by reason of the infringement.* The item of profits should not have been allowed or taken into consideration in determining the remedial relief to which the complainants were entitled by way of fine or otherwise.

<u>Krentler-Arnold Hinge Last Co. v. Leman</u>, 50 F.2d 699, 707 (1st

Cir. 1931) (emphasis added).[11]

On the issue of whether the profits were recoverable, the Supreme Court reversed the Court of Appeals. Noting that the amount of profits had been "ascertained" in the District Court proceedings, Leman, 284 U.S. at 455, the Supreme Court held that the profits were the equivalent of or a substitute for the injured party's actual pecuniary loss. Id. at 456; see also Rick v. Buchansky, 2001 WL 936293, *6 (S.D.N.Y. Aug. 16, 2001) ("Where actual pecuniary loss is difficult to prove, compensatory relief may include profits derived by the contemnor from the violation of a court order."). In other words, the Supreme Court treated the profits in the contemnor's possession "as if" they were the injured party's compensatory damages. In so doing, the Supreme Court rejected the Court of Appeals' narrow view of the pecuniary loss recoverable for civil contempt and adopted a more expansive view. Leman, 284 U.S. at 456.

The point here is that Leman added more to the bucket of pecuniary losses recoverable as compensatory damages for civil contempt. It did not add new or different types of damages to that bucket, i.e., nonpecuniary for emotional distress or otherwise, as Plaintiffs suggest. In that regard, the court does not read Leman as support for the proposition that emotional distress damages are-or historically have been-recoverable for

---

[11]The Court of Appeals adhered to its initial opinion on rehearing. See Krentler-Arnold Hinge Last Company v. J. Howard Leman, Administrator, C. T. A., et al., 1931 WL 26200 (1st Cir. June 29, 1931). The rehearing opinion makes it even more clear that the Court of Appeals considered the profits at issue in the context of pecuniary loss and not as something else. Id. At *6.

civil contempt.

Duty bound here to look to the "old soil" of injunction enforcement and apply its "traditional principles" of civil contempt "straightforwardly" to the discharge injunction, the weight of historical authority compels the court to hold that Plaintiffs may not recover nonpecuniary emotional distress damages based on a claim under § 524(i) which treats a violation of its terms as a violation of § 524(a)(2). The measure of recovery for civil contempt under § 105(a) for a violation of § 524(a)(2)-either directly or through § 524(i)-is compensatory damages for pecuniary loss. Count 2 will therefore be dismissed. And because further amendment to claim emotional distress damages for a violation of the discharge injunction would be futile, Count 2 will be dismissed with prejudice and without leave to amend.

B. *Count 1 - The Amended Claim Under 11 U.S.C. § 524(i)*

Count 1 alleges that in violation of § 524(i) Defendants willfully failed to credit payments they received from the Trustee and, thus, Defendants willfully failed to credit payments received "under a plan." Defendants move to dismiss the amended § 524(i) claim in Count 1 for two reasons: (1) Plaintiffs' second modified plan was in default; and (2) Plaintiffs have not sufficiently alleged that payments Defendants received from the Trustee, *i.e.*, payments "under a plan," were improperly credited. Defendants' arguments have merit and the court agrees with both.

1. ". . . *unless . . . the plan is in default . . .*"

Section § 524(i) makes it a violation of the discharge injunction of § 524(a)(2) for a creditor to willfully fail to

- 24 -

credit payments received "under a plan" if the failure causes material injury "unless . . . the plan is in default." 11 U.S.C. § 524(i). There are two relevant defaults for consideration here.

The first default was a monetary default consisting of three missed plan payments in excess of $10,000.00. Based on an initial plan payment due in April 2014, these payments should have been made no later than March 2019 and would have been due for January, February, and March 2019. This monetary default was apparently considered to have been cured sometime before the Trustee's motion to dismiss was heard in September 2019 because the Trustee withdrew the motion and thereafter filed notice that Plaintiffs completed their plan payments.

The second default was a nonmonetary default consisting of a chapter 13 plan term that exceeded the applicable (and maximum allowable) sixty-month commitment period by six months. See 11 U.S.C. §§ 1322(d), 1325(b)(4).[12] As the Trustee noted in his September 2019 motion to dismiss, when the motion was filed Plaintiffs were in month sixty-six of a sixty month plan and were three plan payments short. In other words, Plaintiffs failed to make their final three plan payments before the maximum allowable commitment period of five years expired and Plaintiffs did not make those payments until some six months later. Plaintiffs' failure to make their final three plan payments before the sixty-

---

[12]Section 1322(d) states, in relevant part, that a chapter 13 "plan may not provide for payments over a period that is longer than 5 years." 11 U.S.C. § 1322(d).

Section 1325(b)(4) defines the "applicable commitment period" for above-median debtors as "not less than 5 years." 11 U.S.C. § 1325(b)(5).

month commitment period expired was an incurable material default
under the second modified plan.[13] In re Kinney, 2019 WL 7938815
(Bankr. D. Colo. Feb. 27, 2019), aff'd, Kinney v. HSBC Bank USA,
N.A. (In re Kinney), 5 F.4th 1136 (10th Cir. 2021), cert. denied,
143 S. Ct. 302 (2022), illustrates this point.

In Kinney, the debtor "failed to make the last three
mortgage payments [required under her Chapter 13 plan] during the
[five year] plan period." Kinney, 2019 WL 7938815 at *1.
Instead, the debtor made three payments about two and a half
months after the end of the five-year chapter 13 plan term and
then requested a discharge anyway. Id. at 1-2. The bankruptcy
court characterized the debtor's actions as a "material default"
in her chapter 13 plan and dismissed the chapter 13 case without
entry of a discharge. Id. at *4. On appeal, the Tenth Circuit
affirmed and characterized the debtor's default as incurable once
the plan's five-year period ended. Kinney, 5 F. 4th at 1140. It
emphatically stated: "The bankruptcy code suggests that material
defaults cannot be cured after the plan has ended." Id. at 1143;
In re Jaggars, 2023 WL 7007491, at *1 (Bankr. E.D. Okl. Oct. 23,
2023) ("As the parties correctly note, the Tenth Circuit opinion
in In re Kinney, 5 F.4th 1136 (10th Cir. 2021) holds that once a
plan's five-year period expires, a bankruptcy court is without
authority to allow a debtor to cure a 'material default.'").

Technically, Plaintiffs should not have been permitted to

---

[13]Section 2.03 of Plaintiffs' second modified plan also
states as follows: "If necessary to complete the plan, monthly
payments may continue for an additional 6 months, but in no event
shall monthly payments continue for more than 60 months."

make their final three plan payments after the sixty-month
commitment period ended because doing so was an impermissible
plan modification under § 1329(c).[14]  _Kinney_, 5 F.4th at 1144.
Dismissal would have been entirely appropriate.  But nobody
objected and the Trustee withdrew the motion to dismiss so
Plaintiffs managed to receive a discharge by the good grace of
the Trustee.  That, however, does not change the status of the
second modified plan as a plan subject to an incurable material
default.[15]  And it is precisely this incurable material default
that renders § 524(i) inapplicable as a matter of law because a
plan in default will not support a § 524(i) claim.  Count 1 will
therefore be dismissed with prejudice and without leave to amend.

> 2.    ". . . _willful failure of a creditor to credit_
>        _payments received under a plan confirmed under_
>        _[Title 11] . . ._"

It initially bears repeating what the District Court made
clear about an amended § 524(i) claim; specifically, that post-

_____

[14]Section 1329(c) states as follows:

A plan modified under this section may not provide for
payments over a period that expires after the
applicable commitment period under section
1325(b)(1)(B) after the time that the first payment
under the original confirmed plan was due, unless the
court, for cause, approves a longer period, but the
court may not approve a period that expires after five
years after such time.

11 U.S.C. § 1329(c).

[15]That a discharge was entered does not change this.  _See_
_United Student Aid Funds, Inc. v. Espinosa_, 559 U.S. 260 (2010).
Moreover, § 1328(a) states that the "as soon as practicable after
completion by the debtor of all payments under the plan . . . the
court shall grant the debtor a discharge."  11 U.S.C. § 1328(a).
Technically, all plan payments were completed.  They were just
completed significantly late.

- 27 -

plan payments, or payments Plaintiffs began making directly to

Defendants beginning in October 2019 after their final plan

payment in September 2019, are not payments "under a plan" within

the meaning of § 524(i).  Valdellon, 2024 WL 404404 at *6 ("The

Court agrees with the Bankruptcy Court that the post-plan

payments were not payments made 'under the plan.'").  That means

the only payments this court need consider as payments "under a

plan" for purposes of Plaintiffs' amended § 524(i) claim are

those payments Defendants received from the Trustee through

Plaintiffs' final plan payment in September 2019.  Id. at *8

("The Bankruptcy Court has not yet considered Debtors'

allegations that payments made by the trustee under the Plan were

misapplied and should give rise to a section 524(i) claim.").

　　　　Plaintiffs do not identify any specific plan payments that

Defendants miscredited.  Rather, Defendants' alleged liability

under § 524(i) is based on an inference that arises as follows:

(1) the Trustee paid Defendants $19,140.48 in prepetition arrears

(as he was obligated to do based on Claim 9-1), SAC ¶ 162, 163,

169; (2) as of January 17, 2019, statements Plaintiffs received

from Defendants showed $19,211.02 credited to prepetition arrears

from payments received from the Trustee, SAC ¶ 164 & Ex. 23; and

(3) through August 16, 2019, statements Plaintiffs received from

Defendants showed $20,623.04 credited to prepetition arrears from

payments received from the Trustee, SAC ¶ 165 & Ex. 23.  From the

differences in arrears actually paid and arrears stated as paid

on statements, Plaintiffs surmise that Defendants over-allocated

plan payments to prepetition arrears and under-allocated plan

payments to postpetition payments.  SAC ¶¶ 166-168, 170-172; see

<u>also</u> Adv. Docket 116 at 12:3-8 ("Here, Valdellons have alleged and shown that Defendants credited, from payments made by the Chapter 13 Trustee, more money to pre-petition arrears than was paid by the Chapter 13 Trustee to pre-petition arrears. *The only way* Defendants could have credited, from payments made by the Chapter 13 Trustee, more money to pre-petition arrears than was paid by the Trustee is for <u>Defendants to have diverted money intended for ongoing maintenance payments to pre-petition arrears.</u>") (former emphasis added, latter emphasis in original). However, at the same time that Plaintiffs suggest that plan payments were improperly credited, Plaintiffs rely on Defendants' sworn response to the Trustee's final cure notice to allege that postpetition loan payments made from plan payments were current when the final plan payment was made in September 2019. SAC ¶¶ 45-47, 146-148.

If the court must accept as true that it was undisputed in September 2019 that Plaintiffs' loan was current as to its postpetition payments, then the only logical conclusion is that plan payments were properly credited. Indeed, Plaintiffs concede as much in their opposition. Adv. Docket 116 at 15:20-22 ("If Defendants had credited payments in accordance with the Trustee's designations and the Trustee's Notice of Final Cure, Valdellons would be current in payments through September 1, 2019 [sic] with payments made by the Chapter 13 Trustee."). It cannot be true that plan payments were miscredited and, at the same time, miscredited plan payments cured arrears and kept postpetition payments current. In other words, if plan payments were miscredited as they are alleged to have been, *i.e.*, over-

- 29 -

allocated to prepetition arrears and under-allocated to postpetition payments, Plaintiffs' loan would not (and could not have been) current as it is alleged it was, and as it is further alleged it was undisputed it was, in September 2019.

It may be that something went wrong with Plaintiffs' loan. And it may be that payments after October 2019 were misapplied, miscalculated, or miscredited. But as the District Court here held, those payments are not payments "under a plan" for purposes of § 524(i) so whatever Defendants did with those payments and how they were credited, applied, or processed is not, and can not be, a basis for liability under § 524(i).

In any event, for the reasons stated above, the court concludes that Plaintiffs have not alleged a viable (much less plausible) amended § 524(i) claim. So even if the second modified plan was not a plan in default, Count 1 would nevertheless be dismissed with prejudice and without leave to amend on the foregoing independent and alternative grounds.

C.     *Counts 3 and 4 - Non-Core State Law Claims*

The claims alleged in Counts 3 and 4 are non-core state law claims. Count 3 alleges claims for breach of contract, negligent infliction of emotional distress, and declaratory relief. SAC ¶¶ 215-237. Count 4 alleges a claim for Unlawful Fraudulent and Unfair Business Acts and Practices (California Business and Professions Code § 17200 *et seq.*). SAC ¶¶ 238-248.

1.     *Subject Matter Jurisdiction Under 28 U.S.C. § 1334*

The non-core state law claims in Counts 3 and 4 do not "arise under" Title 11 or "arise in" a case under Title 11. See 28 U.S.C. § 1334. They also are not "related to" Plaintiffs'

chapter 13 case.

"Related to" jurisdiction exists only if, in any way, "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy." Fietz v. Great Western Savings (In re Fietz), 852 F.2d 455, 457 (9th Cir. 1988) (internal quotations and citations omitted). The court is hard-pressed to comprehend how, if at all, the non-core state law claims in Counts 3 and 4 could conceivably have any effect whatsoever on the administration of Plaintiffs' chapter 13 case inasmuch as Plaintiffs no longer have a chapter 13 case being administered. Creditors in Plaintiffs' chapter 13 case have been paid. Plaintiffs have completed all plan payments. Plaintiffs' chapter 13 plan has run (if not over-extended) its sixty-month course and the plan term can not be further extended. Plaintiffs have also received a discharge, the Trustee's final account has been filed and approved, and the Trustee has been relieved of all duties relative to the estate.

The point here is that there is nothing more to do or that can be done in Plaintiffs' chapter 13 case. There is no longer a chapter 13 case or estate to administer. The court therefore concludes that it lacks even "related to" jurisdiction over the non-core state law claims in Counts 3 and 4 without the Bankruptcy Code claims. The non-core state law claims in Counts 3 and 4 will therefore be dismissed without prejudice.

　　　　2.　　*Discretionary Abstention Under 28 U.S.C. § 1334(c)(1)*

Even if the court had "related to" jurisdiction over the non-core state law claims in Counts 3 and 4, or if jurisdiction

were ever found to exist, the court would nevertheless exercise
its discretion to abstain from adjudicating those claims under 28
U.S.C. § 1334(c)(1) in the absence of any claim under the
Bankruptcy Code.  A bankruptcy court considers twelve factors
when determining whether to abstain under 28 U.S.C. § 1334(c)(1):

> (1)  the effect or lack thereof on efficient estate
> administration if the court abstains;
>
> (2)  the extent to which state law issues predominate
> over bankruptcy issues;
>
> (3)  the difficulty or unsettled nature of applicable
> law;
>
> (4)  the presence of a related proceeding commenced in
> state court or other non-bankruptcy court;
>
> (5)  the jurisdictional basis, if any, other than 28
> U.S.C. § 1334;
>
> (6)  the degree of relatedness or remoteness of the
> proceeding to the main bankruptcy case;
>
> (7)  the substance rather than form of a 'core' matter;
>
> (8)  the feasibility of severing state law claims from
> core bankruptcy matters to allow judgments to be
> entered in state court with enforcement left to the
> bankruptcy court;
>
> (9)  the burden on the bankruptcy court's docket;
>
> (10) the likelihood that the commencement of the
> proceeding in bankruptcy court involves forum shopping
> by one of the parties;
>
> (11) the existence of a right to a jury trial; and
>
> (12) the presence of non-debtor parties.

Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.),
912 F.2d 1162, 1167 (9th Cir. 1990).

First, as noted above, that there is no longer a chapter 13
estate necessarily means that abstention can have no effect on
the administration of any estate.

- 32 -

Second, the non-core claims in Counts 3 and 4 are state law claims.

Third, state law relative to the claims in Counts 3 and 4 is not difficult and it is well-developed.  The state court is particularly adept at adjudicating those claims.

Fourth, absence of a pending state court proceeding is an important-but not determinative-consideration.  There is a statement in <u>Security Farms v. International Brotherhood of Teamsters, Chauffers, Warehousemen, and Helpers</u>, 124 F.3d 999, 1009-10 (9th Cir. 1997), that could be read to suggest that abstention requires a pending proceeding in another forum. However, <u>Wilks v. United States (In re Wilks)</u>, 1999 WL 357919, at *5 (9th Cir. BAP April 22, 1999), dispels any such notion.  The court therefore does not view the absence of a pending state court proceeding as an impediment to abstention.

Fifth, without Bankruptcy Code claims there is no jurisdictional basis over the non-core state law claims in Counts 3 and 4.

Sixth, the non-core state law claims in Counts 3 and 4 are remote and not related to Plaintiffs' chapter 13 case because there no longer is a chapter 13 case being administered.

Seventh, the state law claims in Counts 3 and 4 are all non-core matters.

Eighth, with the dismissal of Bankruptcy Code claims there are no core matters to sever non-core matters from.

Ninth, adjudication by this court of the non-core state law claims in Counts 3 and 4 that a state court is equally capable of determining would place a burden on this court's docket in that

- 33 -

1    it would take judicial resources more appropriately dedicated to

2    core jurisdictional matters.

3        Tenth, the court perceives no forum shopping.  Plaintiffs

4    filed in this court on the basis of Count 1.

5        Eleventh, Defendants may be entitled to a jury trial on the

6    non-core state law claims in Counts 3 and 4.  Any jury trial

7    would be more efficiently handled in state court instead of by a

8    district (or by consent bankruptcy) court judge.  These claims

9    also raise the specter of the need for this court to obtain

10   Defendants' consent to the entry a final judgment by a bankruptcy

11   judge.

12       Twelfth, to the extent Plaintiffs are no longer chapter 13

13   debtors the dispute is between non-debtors.

14       In short, the <u>Tucson Estates</u> factors favor abstention even

15   if "related to" subject matter jurisdiction over the non-core

16   state law claims in Counts 3 and 4 exists or if it is ever found

17   to exist.

18

19

20                              **V.**
                             **Conclusion**

21       Based on the foregoing, Defendants' motion to dismiss will

22   be **GRANTED**.  Counts 1 and 2 of the second amended complaint will

23   be **DISMISSED WITH PREJUDICE**.  Counts 3 and 4 of the second

24   amended complaint will be **DISMISSED WITHOUT PREJUDICE**.

25       A separate order and judgment will issue.

26       Dated:  April 30, 2024.

27

28



                     UNITED STATES BANKRUPTCY JUDGE

                             - 34 -

1

## INSTRUCTIONS TO CLERK OF COURT
## SERVICE LIST

2

3     The Clerk of Court is instructed to send the attached
document, via the BNC, to the following parties:

4

Mark A. Wolff
8861 Williamson Dr #30
Elk Grove CA 95624-7920

5

6

Robert W. Norman
9970 Research Drive
Irvine CA 92618

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28